SQUIRE, SUPT. OF BANKS; SIDEROPOULOS, APPEL.ANT, *v.*
SIDEROPOULOS, APPELLANT; MOURATIDES ET AL.,
APPELLEES.

(No. 1972—Decided October 16, 1941.)

*Mr. Charles S. Weintraub,* for appellants.
*Mr. Harry Nusbaum,* for appellees.

SHERICK, J.   This action was originally commenced
in 1935 by the superintendent of banks to foreclose a
mortgage on property jointly purchased and owned by
Mouratios G. Mouratides, Theodore Siteropoulos and
Eleftherios Sideropoulos.

Thereafter the three tenants in common selected
Sideropoulos, who occupied a portion of the premises,
to procure a mortgage settlement by means of an H. O.
L. C. loan, or if such was not possible, by a bank loan.
To this end the other two tenants in common conveyed
their interests to Sideropoulos, who at the same time
re-conveyed back to them a one-half interest in the
property, this latter deed being withheld from record.
This proposed re-financing failed of accomplishment.

A receiver had been appointed to collect the rents.
This was done for him by Sideropoulos.  There exists
a dispute concerning whether or not this tenant turned

over these rents, or whether he made certain repairs. By agreement these questions were postponed for future inquiry, with which we are not now concerned. Late in 1938, the wife of Sideropoulos died, and he came into possession of $900 life insurance money, which was given to and deposited in the name of his son George. It is also evidenced and not denied that Sideropoulos was indebted to his cotenants and other people.

Thereafter in 1939, Sideropoulos effected a settlement of the bank mortgage, which then aggregated nearly $7,000, for the sum of $1,400. This latter sum was made up by the use of the $900 item, and equal borrowings by Sideropoulos and his son, George. Sideropoulos effected all the loans and caused the bank note and mortgage to be assigned to his son George. No part of these transactions were disclosed to the other two cotenants. Next in sequence George Sideropoulos was substituted as party plaintiff, demanding foreclosure.

Thereupon the two cotenants filed an answer and cross-petition asking that the note and mortgage be cancelled of record, that the plaintiff be denied the relief sought, and that an accounting be granted. Sideropoulos then filed an answer and cross-petition requesting, of his cotenants, reimbursement for taxes paid in a sum better than $1,000. This claim is not denied. He also claimed reimbursement for some $1,200 expended for repairs. We have previously commented on this last item.

The trial court found with respect to the assigned note and mortgage that George Sideropoulos was but a trustee for his father, who is the equitable owner thereof, and that the son holds the note for the benefit of his father and his father's cotenants, upon seasonable contribution by the latter of one-half of the amount paid. The court determined that the substituted

plaintiff was not entitled to foreclosure, and that the two cotenants were entitled to the relief sought.

From this decree, the son, plaintiff, appellant herein, and the father, defendant, appellant herein, appealed upon questions of law and fact. The cause is submitted on the record made in the trial court.

Just what interest did plaintiff-assignee acquire by his father's transactions? We are convinced from the enumerated operative facts and other numerous matters that plaintiff is but a straw man set up by his father for the purpose of perpetrating a fraud upon his cotenants, appellees herein, and that plaintiff by his acquiescence, knowledge and participation, is a party thereto. He had full knowledge of the cotenants' dilemma. He knew that his father was acting for the appellees. Practically all of the consideration for the mortgage assignment came from the father's substance. Procurement of the extra $500 was arranged by the father. Plaintiff's own explanation of the portion of the consideration which he claims to have furnished is hardly worthy of credence. The father's generosity is strongly tainted with suspicion by his seeming attempt to place his property beyond the reach of his creditors. He caused the assignment to be made to the son in the son's absence—while his son was away in college. Neither the son nor the father made known the transaction to the cotenants, whose first knowledge thereof came about as a result of a demand for payment of the mortgage debt. It is our judgment that plaintiff is no more than a mere trustee of the note and mortgage for the benefit of his father and his cotenants. He is not entitled to foreclosure and the same is denied.

Appellants' counsel advances a progressive theory. It is insisted that, if the son is denied relief, the cotenant father is entitled to all for which he asks, upon the assumption that he had a right in law to acquire

and exclusively possess the existing encumbrance on the property; and, inasmuch as the cotenants did not acquire title from a common ancestor, he is not amenable to the rule found well stated in 2 Thompson on Real Property, 974, Section 1789, that:

"Cotenants stand in a relation of trust or confidence to each other with reference to the joint or common property. If one purchases an outstanding title to such property, or pays an encumbrance upon it, he is presumed to act in the common interest of all the tenants. A community of interest produces community of duty."

It is strenuously argued that the rule applies only to cotenancy springing from a common ancestor and not to titles acquired by purchase, and this claim is attempted to be fortified further by the declaration that the cotenant appellees have not paid or offered to pay their portion of the expense of the mortgage requirement within a reasonable time, hence the procurement of the lien inures to the sole benefit of the purchasing cotenant.

We grant the premise that a cotenant may by purchase acquire title to an existing lien, but clearly it is the law that if one does so, it is for the common benefit of all, unless his cotenants fail to reimburse their benefactor within a seasonable time for the advances made which have inured to their benefit. The evidence in this case is positive from the lips of the two appellants that they did not make known their purchase to the appellee cotenants. This being true, then only by some psychic process could the appellees be informed of their duty of contribution. Surely one is not entitled to be advantaged by a dereliction which he himself has induced by his failure to speak when he was in duty bound so to speak. He who seeks equity must do equity is a rule of ancient vintage.

Is the appellant cotenant's case an exception to the

rule? We think not. Sound reason should and does in most instances motivate the promulgation of a rule. If three men engage in a common adventure and therein acquire title to real estate for their common profit, it must and does follow that each will act with respect thereto for their common advantage. It seems to us that, when men voluntarily band together for such a purpose and confidences are reposed in each other, the reason for the rule is equally strong, if not stronger, than in those involuntary cases where several, by no act of their own, inherit real property from a common ancestor. Are confidences to be encouraged among men in joint enterprises of this character, and thereafter sharp practices countenanced, when the sly one by stealth seeks to dispossess his cotenants of their interest in the common estate? If this is the rule, then equity lends its aid to injustice and deceit. We hold that the appellant cotenant's case is not an exception to the rule.

We conclude that appellees are entitled to an accounting, but that they are required therein to contribute to the appellant cotenant for one-half of the taxes paid by him for their benefit, together with legal interest from the date of the tax payment, and also for one-half of the note and mortgage settlement. together with legal interest from the date of their acquisition of knowledge from their cotenant of the purchase of the encumbrance. Judgment for costs is entered against the appellants, and the cause is remanded to the Court of Common Pleas for further proceedings therein. A decree shall be drawn accordingly.

*Decree accordingly.*

LEMERT, P. J., and MONTGOMERY, J., concur.